Question Submitted by: The Honorable Jon Echols , Oklahoma House of Representatives, District 90
2024 OK AG 19
Decided: 12/30/2024
Oklahoma Attorney General Opinions
Cite as: 2024 OK AG 19, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does a county have sovereignty in selecting a county jail location on land owned by the county over the objection of a municipality, or does a municipality have the ability, through zoning, to stop the county from constructing a county jail on county-owned land?
I.
SUMMARY
¶1 Oklahoma County is not a superior sovereign to Oklahoma City. The Oklahoma Supreme Court overruled the superior sovereign rule in 1986 when it decided Indep. Sch. Dist. No. 89 of Oklahoma Cnty. v. City of Oklahoma City, , . In deciding that case, the court adopted the balancing-of-the-interests rule developed by the New Jersey Supreme Court in Rutgers, State University v. Piluso, 60 N.J. 142, 286 A.2d 697 (N.J. Sup. Ct. 1972). In short, the New Jersey court identified five factors (the "Rutgers factors") to weigh in determining whether an entity is immune from a municipal zoning power. Applying the Rutgers factors to this matter, Oklahoma County enjoys immunity from Oklahoma City's zoning power.
I.
BACKGROUND
¶2 Oklahoma law expressly requires every county to either "have a jail or access to a jail." . And the sheriff "[has] charge of the county jail of his county . . . ." Id. § 47. Every county also possesses the responsibility for upkeep of the jail and due care of inmates. Id. § 51. Even more, the county's responsibility to adequately fund the operations of the county jail is one of constitutional import. , ¶ 20. Considering these clearly defined legal duties vested with the county, the office provides a summary of the most salient facts giving rise to the current dispute between Oklahoma County and Oklahoma City about the construction of the new county jail.
¶3 The facts here are well known. For too long, disrepair, deterioration, and inmate deaths have plagued the Oklahoma County Jail. In response, Oklahoma County Commissioners ("Commissioners") sent a ballot measure to Oklahoma County voters in 2022 to decide whether they would agree to the issuance of $260 million in bonds for the construction of a new county jail. Voters approved the ballot question, with nearly sixty percent voting in favor of the measure. The county eventually purchased property inside the city limits of Oklahoma City, envisioning the site as the future location of the new county jail. Before the County acquired the land, the property's previous owner requested a special use permit on behalf of Oklahoma County. The Oklahoma City Planning Commission recommended approval of the permit, but the City Council of Oklahoma City ("City Council") denied the permit.
¶4 The Commissioners subsequently appealed the City Council's decision to the District Court of Oklahoma County on June 18, 2024, arguing that Oklahoma County is the superior sovereign. See Oklahoma County Board of County Commissioners v. The City of Oklahoma City, Case No. CV-2024-1659. Following Oklahoma City's filing of a motion to dismiss, Chief Justice Kane ordered Tulsa County District Judge Doug Drummond to preside over the matter.
¶5 The City's denial of the permit and the County's appeal to the district court prompted this request for an official Attorney General Opinion. Due to the time-sensitive nature of your request, this office initially responded on December 12, 2024, through a non-binding letter of counsel. Since then, the City Council effectively ignored the letter of counsel and proceeded to unsuccessful mediation with the County. Accordingly, this office hereby converts the answers previously given to meet the time-sensitive nature of the request in a letter of counsel to a formal opinion under (A)(5).
III.
DISCUSSION
¶6 In his order denying Oklahoma City's motion to dismiss, Judge Drummond listed the Rutgers factors adopted by the Oklahoma Supreme Court in Indep. Sch. Dist. No. 89 of Oklahoma Cnty. v. City of Oklahoma City, , ¶ 12, , 1216 (applying Rutgers, State University v. Piluso, 60 N.J. 142, 286 A.2d 697, 702-03 (N.J. Sup. Ct. 1972)). Accordingly, determining whether the county has immunity from Oklahoma City's zoning regulations depends on the balancing of the following factors:
(1) The nature and scope of the instrumentality seeking immunity,
(2) The kind of function or land use involved,
(3) The extent of the public interest to be served thereby,
(4) The effect local land use regulation would have upon the enterprise concerned, and
(5) The impact upon legitimate local interests.
City of Oklahoma City, ¶ 12, 722 P.2d at 1216 (citation omitted). Rutgers also observed:
One factor [may] be more influential than another or may be so significant as to completely overshadow all others. No one [factor] . . . is to be thought of as ritualistically required or controlling. And there will undoubtedly be cases . . . where the broader public interest is so important that immunity must be granted even though the local interests may be great . . . . [T]here is no precise formula or set of criteria which will determine every case mechanically and automatically.
City of Oklahoma City, ¶ 12, 722 P.2d at 1216 (citation omitted).
¶7 Significantly, the Oklahoma Supreme Court also endorsed Rutgers's assertion that such immunity from municipal zoning regulations is not limitless. City of Oklahoma City, ¶ 13, 722 P.2d at 1216 (Rutgers citation omitted). When exercising such immunity, a political subdivision cannot "arbitrarily override all important legitimate local interests." City of Oklahoma City, ¶ 13, 722 P.2d at 1216 (citation omitted). This balancing-of-the-interests rule "must apply to the state and its instrumentalities [and] . . . to lesser governmental entities entitled to immunity." Id. In response to the City of Oklahoma City case, a previous administration of this office withdrew two former Attorney General Opinions when concluding that the State itself was subject to the balancing-of-the-interests rule. , ¶ 11 (withdrawing and 1973 OK AG 327). Put another way, the State could not assert sovereign superiority against the municipality. As a result, if the State does not get to claim sovereign superiority to end the argument, then neither does Oklahoma County.
¶8 On reviewing the Oklahoma Constitution and title 19 of the Oklahoma Statutes, the office could not locate any authority where the Legislature expressly intended to immunize counties from municipal zoning ordinances or place them in a superior position to municipalities. Provided, Oklahoma City, a charter municipality, also possesses no counterargument that its charter gives the city broad zoning authority, effectively making zoning a matter of purely municipal concern. See City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co., 699 F2d 507 (10th Cir. 1983); Dev. Industries, Inc. v. City of Norman, , . Instead, Oklahoma City must adhere its zoning decisions with article 43 of the Oklahoma Municipal Code like non-charter municipalities do.
¶9 Reviewing the Rutgers factors outlined above, Oklahoma County enjoys immunity in this matter. First, Oklahoma County and Oklahoma City are merely one hierarchical step apart. And Oklahoma County encompasses most of Oklahoma City. But this factor is not determinative. Second, the function or land use involved will be forced detention. In this matter, the Oklahoma City Planning Department and Commission both recommended approval of the special use permit. Yet, the City Council voted to deny the permit. In essence, prior to denial, city personnel saw no reason to reject the application due to negative effects on public health, safety, and welfare. Third, constructing a new detention center greatly serves the public interest. Voters approved the new facility, which the county must have or provide access to such a facility in another county. . Conceptually, the new facility will be safer for inmates, jail employees, and visitors, such as state officials present for jail inspections under title 74, section 192 of the Oklahoma Statutes. Even more, numerous lawsuits and failed safety inspections will no longer persist. Almost assuredly, at least, these ongoing burdens on taxpayer resources will be lessened by constructing and maintaining the new facility.
¶10 Fourth, the proposed property is currently zoned as heavy industry. This zoning has little bearing on the proposed use of the property for forced detention. Further, to the extent that any issues still exist, Oklahoma County agreed to changes raised in the technical evaluation. Also, Oklahoma County chose a location away from security-sensitive establishments like schools, daycares, and houses of worship. Fifth, any legitimate local interests have seemingly been handled by experts within Oklahoma City's Planning Department and Planning Commission; both recommended approval.
¶11 Finally, Oklahoma County's new jail project serves "broader governmental interests" and, therefore, is so important and statutorily mandated, to a degree, that the County has immunity in its determination of the new county jail site. This immunity exists despite vocalized local interests, which this office recognizes. Essentially, there will be concerns or objections raised--founded or unfounded--no matter where Oklahoma County chooses to build the new detention center. To allow concerns and objections to control the conversation would equate to an endless cycle of inaction between Oklahoma City and Oklahoma County.
¶12 This does not, however, give Oklahoma County carte blanche discretion to run roughshod in disregard of Oklahoma City's valid and pressing concerns about the proposed jail site. Instead, Oklahoma County ought to consult with Oklahoma City, listen and study local objections, problems, and find suggestions in order to minimize the conflict. , ¶ 9 (citation omitted). Oklahoma County demonstrated good faith seeking to work with the Oklahoma City by participating in the permitting and zoning process.
¶13 In contrast, the City Council responded to the County's efforts dismissively. First, as described above, the City Council flouted its own Planning Department and Commission's recommendation to approve the special permit. This prompted Oklahoma County's current appeal before Judge Drummond. Second, after a failed mediation, the City Council ceased negotiations all together and refuses to respond to Oklahoma County's continued efforts to raze the impasse between itself and the City Council. Though the City Council may believe that it asserts valid, pressing concerns, its action (more appropriately, inaction) smacks of the bad-faith politics of obstruction and obstinance.
* * *
¶14 It is, therefore, the official Opinion of the Attorney General that:
While Oklahoma County is not a "superior sovereign" to Oklahoma City, applying the Rutgers factors, Oklahoma County enjoys immunity from Oklahoma City's zoning power in this matter as it relates to the site of the new county jail.
GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
THOMAS R. SCHNEIDER
DEPUTY GENERAL COUNSEL
FOOTNOTES
 Oklahoma County, Board of County Commissioners Meeting Minutes, Apr. 4, 2022, https://oklahomacounty.legistar.com (select "Board of County Commissioners; then search date April 4, 2022 and click on "Board of County Commissioners 9:00 AM 2nd Amended" hyperlink; and select "Minutes") (on file with the undersigned).
 Appl. for Special Permit, Case No. SP-00588, filed Mar. 14, 2024, https://access.okc.gov (select "Subdivision and Zoning under "more"; search "SP-00588" in the "Number" field and select "Special Permit" in the "Type" field; select "Attachments" under the dropdown list for Record SP-00588; and click on "SP-588 Denied.pdf") (on file with the undersigned).
 City of Oklahoma City, City Council Meeting Minutes, May 21, 2024, https://okc.primegov.com/public/portal (under "Archived Meetings" for the City Council, navigate to Date/Time "May 21, 2024 08:30 AM" and select "Minutes") (on file with the undersigned).
 Through the issuance of this Opinion, the office deviates from its normal policy of not furnishing an opinion on questions scheduled for a determination by any court of competent jurisdiction. Statement of Policy of the Attorney General Regarding Issuing Formal Opinions, ¶ 9. The basis for this deviation concerns the exigent nature of this opinion request, specifically the impending expiration of federal funds dedicated to partially finance the construction of the new detention center.
 Pet. at 10; see also OSCN Case Details for Oklahoma County Board of County Commissioners v. The City of Oklahoma City, Case No. CV-2024-1659, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CV-2024-1659 (last visited Dec. 30, 2024).
 The Attorney General is the state's chief law officer and is entrusted with the duty of providing legal guidance to public officers and advising them on questions of law which relates to their official duties. This office's opinions are binding upon state officials affected by them, and they must follow and not disregard those opinions. ; State ex rel. York v. Turpen, , ¶ 5, , 765. Equally, local public officers, including county and municipal officers, must follow and not disregard opinions or advice from this office until judicially relieved of compliance. Hendrick v. Walters, , ¶ 20, , 1243; Rasure v. Sparks, , ¶ 7, , 498. A public officer who acts in conformity with this office's opinion is afforded protection from civil liability. Rasure, , ¶ 7, 183 P. at 498
 In adopting the Rutgers factors, the Oklahoma Supreme Court rejected and overturned its precedent in In re Suntide Inn Motel, Oklahoma City, , , which applied the superior sovereign test. City of Oklahoma City, ¶ 14, 722 P.2d at 1216.
 Josh Dulaney et al., Broken Trust: How the Oklahoma County jail leadership failed those it sought to protect, The Oklahoman (May 14, 2023, 5:00 AM), https://www.oklahoman.com/in-depth/news/2023/05/14/oklahoma-county-jail-trust-one-of-deadliest-in-america-okc/70112259007/; Richard Mize, Oklahoma County jail trust will continue legal appeal to ban state's surprise inspections, The Oklahoman (Nov. 14, 2024, 5:50 AM), https://www.oklahoman.com/story/news/2024/11/14/oklahoma-county-jail-trust-surprise-inspections-legal-appeal/76233598007/.
 Appl. for Special Permit, supra note 2.
 Appl. for Special Permit, supra note 2.
 Richard Mize, As mediation fails, OK County scraps plans for jail health center; ARPA funds to be spread, The Oklahoman (Dec. 27, 2024, 5:20 AM), https://www.oklahoman.com/story/news/2024/12/27/oklahoma-county-jail-health-center-scrapped-arpa-funds-oklahoma-city/77234615007/; Deanne Stein, 'A Sad Day for Oklahoma County:' Mediation Fails to Resolve Lawsuit Between Oklahoma County and OKC, News9.com (Dec. 26, 2024, 6:23 PM) https://www.news9.com/story/676de95ec0cdc3d33de020c4/a-sad-day-for-oklahoma-county:-mediation-fails-to-resolve-lawsuit-between-oklahoma-county-and-okc.